IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Amy T.,[1] | ) |
| | ) |
|       **Plaintiff,** | ) |
| | ) No. 22 C 4391 |
|    v. | ) |
| | ) Magistrate Judge Beth W. Jantz |
| **KILOLO KIJAKAZI,** | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
|       **Defendant.** | ) |
| | ) |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Amy T.'s application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. §636(c). For the reasons that follow, Plaintiff's motion for summary judgment [dkt. 18, Pl.'s Mot.] is denied, and the Commissioner's cross-motion for summary judgment [dkt. 24, Def.'s Mot.] is granted. The Court affirms the Commissioner's final decision.

---

[1] In accordance with Internal Operating Procedure 22, Privacy in Social Security Opinions, the Court refers to Plaintiff by her first name and the first initial of her last name.

**BACKGROUND**

**I.     Procedural History**

On September 19, 2019, Plaintiff filed a claim for DIB and SSI, alleging disability since February 1, 2019, due to bipolar disorder, borderline personality disorder, depression, fatigue, dyslexia, hypomania, arthritis, and short-term memory loss. [Dkt. 14-1, R. 371-84.] Plaintiff's claim was denied initially and again upon reconsideration. [R. 183-87, 192-99.] Plaintiff requested a hearing before Administrative Law Judge ("ALJ") William Spalo, which was held on December 14, 2020. [R. 72-96.] ALJ Spalo issued a decision denying Plaintiff's claim on December 29, 2020. [R. 151-70.] Plaintiff appealed that decision to the Appeals Council, which remanded Plaintiff's case for further proceedings. [R. 176-77.] A second hearing was held before ALJ Edward Studzinski on December 2, 2021. [R. 39-71.] Plaintiff appeared by telephone due to the COVID-19 pandemic and was represented by counsel, Marcie Goldbloom. [Id.] Vocational expert ("VE") Reno also testified (no first name for VE Reno appears in the record). [R. 65-70.] On January 5, 2022, the ALJ denied Plaintiff's claim for benefits, finding her not disabled under the Social Security Act. [R. 15-38.] The Social Security Administration Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner. [R. 1-7.]

**II.    The ALJ's Decision**

The ALJ analyzed Plaintiff's claim in accordance with the Social Security Administration's five-step sequential evaluation process. [R. 19-20.] The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of February 1, 2019 (though she had worked part-time during some of the relevant period). [R. 20.] At step two, the ALJ concluded that Plaintiff had the following severe impairments: bipolar disorder and obesity.

[R. 21.] The ALJ concluded at step three that her impairments, alone or in combination, do not meet or medically equal one of the Social Security Administration's listings of impairments (a "Listing"). [R. 21-23.] Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light, unskilled work with the following additional limitations:

> not capable of working where she would be exposed to excessive noise or bright, flashing lights exceeding what is generally encountered in an office-type work environment. The claimant is limited to working in non-hazardous environments, i.e., no driving at work, operating moving machinery, working at unprotected heights, and she should avoid concentrated exposure to unguarded hazardous machinery. She can never climb ladders, ropes or scaffolds. The claimant is further limited to simple, routine tasks, work involving no more than simple decision-making, no more than occasional and minor changes in the work setting, and work requiring the exercise of only simple judgment. She is not capable of multitasking, or work requiring considerable self direction. She can work at a consistent production pace. She is further precluded from work involving direct public service, in person or over the phone. She is unable to work in crowded, hectic environments. The claimant can tolerate brief and superficial interaction with supervisors and co-workers, but is not to engage in tandem tasks.

[R. 23-30.] At step four, the ALJ concluded that Plaintiff did not have any past relevant work to consider. [R. 30.] At step five, based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff could perform jobs existing in significant numbers in the national economy, leading to a finding that she is not disabled under the Social Security Act. [R. 31-32.]

## DISCUSSION

### I. Judicial Review

Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine disability

within the meaning of the Social Security Act, the ALJ conducts a five-step inquiry, asking whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the RFC to perform her past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. 20 C.F.R. § 416.920(a). "A finding of disability requires an affirmative answer at either step three or step five." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). "The claimant bears the burden of proof at steps one through four, after which at step five the burden shifts to the Commissioner." *Id.*

Because the Appeals Council denied review, the ALJ's decision became the final decision of the Commissioner and is reviewable by this Court. 42 U.S.C. § 405(g); *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). Judicial review of the ALJ's decision is limited to determining whether it adequately discusses the issues and is based upon substantial evidence and the proper legal criteria. *Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation omitted). "To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses." *Beardsley v. Colvin*, 758 F.3d 834, 836-37 (7th Cir. 2014). While this review is deferential, "it is not intended to be a rubber-stamp" on the ALJ's decision. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). The Court

will reverse the ALJ's finding "if it is not supported by substantial evidence or if it is the result of an error of law." *Id.* at 327.

The ALJ has a basic obligation both to develop a full and fair record and to "build an accurate and logical bridge between the evidence and the result [so as] to afford the claimant meaningful judicial review of the administrative findings." *Beardsley*, 758 F.3d at 837; *see also Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022). Although the ALJ is not required to mention every piece of evidence in the record, the ALJ's analysis "must provide some glimpse into the reasoning behind [his] decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001); *accord Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). The ALJ "must explain [the ALJ's] analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (quoting *Briscoe*, 425 F.3d at 351). Thus, even if reasonable minds could differ as to whether the claimant is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder*, 529 F.3d at 413.

**II.  Analysis**

Plaintiff argues that the ALJ (1) failed to include appropriate restrictions based on her moderate limitations in concentration, persistence, and pace in the hypothetical posed to the VE and the ultimate RFC determination, (2) failed to appropriately accommodate Plaintiff's severe migraines in the RFC, and (3) failed to provide a logical and well-supported rationale for rejecting the medical source opinion of Plaintiff's treating psychiatrist. [Dkt. 18, Pl.'s Mem. at 11-15; dkt. 26, Pl.'s Reply at 2-9.] For the reasons that follow, the Court affirms the ALJ's decision.

5

**a. The ALJ's Consideration of Plaintiff's Moderate Limitation in Concentration, Persistence, and Pace**

Plaintiff's first argument attacks both the ALJ's alleged failure to include restrictions caused by moderate limitations in concentration, persistence, and pace (often shortened to "CPP") in the ultimate RFC and in the hypothetical given to the vocational expert. [Dkt. 18 at 11-13.] This argument is based on the fact that the ALJ found, as part of his analysis at Step Three, that Plaintiff's medical records supported a "moderate limitation" in CPP. [R. 22.] The Court finds no error in the CPP limitations that the ALJ included in either the hypothetical posed to the VE or the ultimate RFC.

In the RFC analysis, the ALJ accommodated Plaintiff's moderate CPP limitation by limiting the Plaintiff to simple, routine tasks; work involving no more than simple decision-making; no more than occasional and minor changes in the work setting; and work requiring the exercise of only simple judgment. [R. 28.] The ALJ also found that she was not able to multitask or conduct work requiring considerable self-direction but found that she could work at a consistent production pace. [R. 28-29.] The ALJ included the same limitations in the hypothetical posed to the vocational expert, which reads as follows:

> Please consider an individual of the claimant's age, education, and work experience who's capable of light level work. She can lift and/or carry up to 20 pounds occasionally and 10 pounds frequently. She has no limitations in her ability to sit, stand, or walk throughout an eight-hour workday. She is not capable of working where she would be exposed to excessive noise or bright flashing lights which exceed what is generally encountered in an office-type environment. She's limited to working in nonhazardous environments. I want no driving at work, no operating of moving machinery, no working in unprotected heights, and she should avoid concentrated exposure to unguarded hazardous machinery. She can never climb ladders, ropes, or scaffolds. She's further limited to simple, routine tasks. She's limited to work that involves no more than simple decision-making. She can choose amongst a limited number of anticipated options, but she's not able to come up with creative solutions to novel situations. She's limited to no more than occasional and minor changes in the work setting in terms of workplace, work processes, and work products. I want jobs where the individual has a pretty good idea of what's expected of them each day when they report to work, and I'd like those expectations to generally

> remain unchanged during the course of a daily tour of duty. This individual can perform work requiring the exercise of only simple judgment. She's better dealing with the concrete rather than the abstract and better dealing with things rather than people. She is not capable of multitasking. She should be allowed to complete one task before she moves on to the next task, and she's not capable of tasks of – of work requiring considerable self-direction. When she completes one task, the next task should either be immediately obvious because the work is -- is delivered to a workstation, or perhaps she has a short checklist that she can refer to. She can perform work which is done at a consistent production pace. Now, she is further precluded, I do not want jobs that involve direct public service either in person or over the phone. This individual is unable to work in crowded or hectic environments, such as carnivals, street fairs, or even the busy portion of a retail store during a holiday seasons. So, even if she were doing something like stocking shelves, that would not be appropriate if it were in a busy, crowded, hectic environment. [] The individual can tolerate brief and superficial interaction with supervisors and coworkers but is not able to -not -- not to engage in teamwork or tandem tasks such as a two person lift where each team member's job performance is directly and immediately dependent upon each other team member's job performance.

[R. 66-68.]

Plaintiff cautions the Court not to be deceived by the length of this hypothetical [dkt. 18 at 12], and it is true that several of the limitations arguably are redundant. For example, "no multi-tasking" is the same as saying "she should be allowed to complete one task before she moves on to the next task," just as saying that she is limited to "simple, routine tasks" and "simple decision-making" is essentially the same as saying she's limited to the exercise of only "simple judgment," "she can choose amongst a limited number of anticipated options," and "she's not able to come up with creative solutions to novel situations." But that's not necessarily a meaningful criticism; it did not hurt for the ALJ to further explain what he meant in this hypothetical.

Indeed, the Court does not find Plaintiff's argument that the ALJ failed to incorporate appropriate CPP limitations in the RFC and VE hypothetical persuasive. Plaintiff cites several cases in which the Seventh Circuit has found that ALJs erred by failing to incorporate moderate CPP limitations into their hypothetical questions to vocational experts, where the hypothetical looked similar to the one at issue here. *DeCamp v. Berryhill,* 916 F.3d 671 (7th Cir. 2019); *Moreno v. Berryhill,* 882 F.3d 722, 730 (7th Cir. 2018); *Lanigan v. Berryhill*, 865 F.3d 558, 563, 565

7

(7th Cir. 2017); *O'Connor-Spinner v. Colvin*, 832 F.3d 690, 698 (7th Cir. 2016). However, as other District Courts in this Circuit have recently noted, these cases were all decided prior to the Seventh Circuit's decision in *Pavlicek v. Saul,* the first case in which the Seventh Circuit applied the definition of "moderate limitation" that was added to the Agency's regulations in 2017. *See, e.g., Ethan B. v. Kijakazi*, No. 21-CV-50014, 2023 WL 3864981, at *4 (N.D. Ill., June 7, 2023) (*citing Pavlicek v. Saul,* 994 F.3d 777, 783 (7th Cir. 2021). In *Pavlicek,* the Seventh Circuit explained that:

> A "moderate limitation" is defined by regulation to mean that functioning in that area is "fair." 20 C.F.R. Pt. 404, Subpt. P, App. 1. As the Commissioner points out, "fair" in ordinary usage does not mean "bad" or "inadequate." So a "moderate" limitation in performing at a consistent pace seems consistent with the ability to perform simple, repetitive tasks at a consistent pace.

994 F.3d at 783.

Since then, and contrary to Plaintiff's argument, District Courts have routinely found that ALJs appropriately accommodated a claimant's moderate CPP limitation where the ALJ restricted a claimant to "simple, routine, repetitive tasks." *See, e.g., Jason B. v. Kijakazi*, No. 22 C 1850, 2023 WL 1992188, at *6 (N.D. Ill. Feb. 14, 2023); *Ethan B.,* No. 21-CV-50014, 2023 WL 3864981, at *4 (ALJ accommodated moderate CPP limitations by restricting claimant to "simple, routine, repetitive tasks" and "simple work-related decisions in an environment with limited changes and without fast-paced production"); *Amalia C. v. Kijakazi,* No. 1:21-CV-01212, 2023 WL 2711609, at *8 (N.D. Ill. Mar. 30, 2023) (same). Here, consistent with this, the ALJ's hypothetical to the VE accommodated Plaintiff's moderate CPP limitations by including the same limitation to "simple, routine tasks," that courts have approved in the above-cited cases, as well as limiting her to "no more than occasional and minor changes in the work setting," "work that involves no more than simple decision-making," and choosing "amongst a limited number of

8

anticipated options." [R. 66.] The ALJ further limited the stress of her work environment by restricting her from multi-tasking, working in crowded or hectic environments, or engaging in teamwork or tandem tasks where she would be dependent on another person's job performance. [R. 67-68.] The RFC determination included these same limitations. [R. 23.]

Still, Plaintiff argues that the ALJ's hypothetical to the VE and ultimate RFC could not be adequate because it did not include a specific amount of time off-task to accommodate for Plaintiff's CPP limitation (Plaintiff similarly argues that the ALJ erred by not including time off-task due to her migraines, an issue dealt with in the next section). Plaintiff points out that the VE testified that work would be precluded if an individual was off task more than 15% of the workday [R. 69], and contends that the medical evidence supports that she would have at least some time off task. [Dkt. 18 at 11-12.] Dr. Voss (the agency medical examiner) reported that Plaintiff was moderately limited in her ability to complete a normal workday and workweek without an unreasonable number and length of rest periods [R. 145-46], and Dr. Gorrepati (Plaintiff's treating psychiatrist) opined that she had marked limitations performing at a consistent pace without an unreasonable number and length of rest periods and also marked limitations completing a normal workday/workweek without interruptions from psychologically based symptoms [R.768.] Plaintiff's therapist likewise reported that Plaintiff is "often overwhelmed." [R. 958.]

The Court finds that this medical evidence did not require the ALJ to include a specific limitation based on time off task, given the other, tailored limitations incorporated into the RFC and VE hypothetical, as discussed above. First, while Dr. Voss rated Plaintiff as "moderately limited" in "the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods" [R. 145], Dr. Voss went on to provide a narrative explanation

9

of this answer. In that narrative, Dr. Voss explained that Plaintiff "retains the mental capacity to understand, remember, and *concentrate* sufficiently in order to carry out one- or two-step instructions for a normal work period." [R. 146 (emphasis added).] Dr. Voss went on to explain that simple work-related decisions, reduced social demands, and a predictable, routine work setting would be best for her, and did not opine as to any specific amount of time that she would be off-task. [Id.] Likewise, neither Plaintiff's therapist nor Dr. Gorrepati included an opinion about any specific amount of time off task that Plaintiff was likely to require, *see Durham v. Kijakazi*, 53 F.4th 1089, 1096 (7th Cir. 2022) (explaining that the claimant has the burden to come forward with evidence supporting frequency of a time-off-task limitation), and, as discussed later in this opinion, the ALJ offered adequate reasons to find Dr. Gorrepati's medical opinion unpersuasive on the whole. Thus, the evidence does not support Plaintiff's argument that the ALJ erred by not including a time-off-task limitation due to Plaintiff's moderate CPP limitations.

**b. The ALJ's Consideration of Plaintiff's Migraines**

Plaintiff's second argument is that the ALJ erred in the RFC analysis by failing to include a limitation for time off task due to Plaintiff's migraines, despite saying that he was accounting for her migraines in the RFC. [Dkt. 18 at 14.] The Court does not find this argument persuasive, as the ALJ *did* incorporate limitations in the RFC that were tailored to Plaintiff's testimony about her migraines. Specifically, Plaintiff testified that the lighting at work would trigger her migraines, and she identified a bone spur in her neck as the underlying cause of the migraines. [R. 57.] In response to this testimony, the ALJ included a limitation in the RFC restricting her from environments with "excessive noise or bright, flashing lights which exceed what is generally encountered in an office-type environment." [R. 28, 66.]

The medical record demonstrates that Plaintiff was seen in the emergency department in January 2020 for migraines "of no known etiology," after her typical migraine medication (acetaminophen with codeine) failed to alleviate her headache. [R. 593.] A CT of the head was performed, no acute intracranial abnormalities were identified, and she was prescribed a short oral course of Toradol. [R. 596.] She then underwent a neurology consultation in April 2020, where she reported migraines occurring 2-3 times per week and that the Toradol prescribed in the emergency department had provided "satisfactory relief." [R. 551.] The ALJ identified no further medical evidence of treatment for migraines, nor does the Plaintiff here.

Given that Plaintiff has not identified any medical opinion evidence stating that she would need a particular amount of time off task to accommodate her migraines, and given that the ALJ *did* specifically tailor RFC limitations to accommodate Plaintiff's own report of her migraine trigger, the Court finds no error with the ALJ's RFC analysis related to Plaintiff's migraines.

**c. Dr. Gorrepati's Medical Source Opinion**

Plaintiff's final argument is that the ALJ failed to provide a logical and well-supported rationale for rejecting the medical source opinion of Plaintiff's treating psychiatrist, Dr. Gorrepati. [Dkt. 18 at 14-15.] Plaintiff states that the ALJ rejected the opinion "in large part" because Plaintiff had not received "aggressive or increasing treatment" for her mental illness and argues that the ALJ was required to explain what "aggressive or increasing treatment" would be, including by calling upon a medical expert if necessary to provide evidence as opposed to the ALJ's own speculation. [Dkt. 18 at 14-15, *citing* R. 29.] Plaintiff also argues that the ALJ's discussion of Plaintiff's episodes of suicidal ideation evinced a belief that she was able to "bounce back" from those episodes and thus her mental impairment was not "all that bad." [Dkt. 18 at 15, *citing* R. 25-29.]

11

The medical source opinion at issue is a three-page "mental impairment questionnaire" that Dr. Gorrepati completed on January 8, 2021, after treating Plaintiff for about eight months. [R. 766-68.] In it, Dr. Gorrepati listed Plaintiff's diagnoses as bipolar disorder, anxiety disorder, and borderline personality disorder, and marked boxes for the following symptoms caused by those impairments: change in personality, difficulty with impulse control, inappropriate affect, anhedonia, psychomotor agitation, feelings of guilt/worthless thinking, inflated self-esteem, irrational fear, disturbance in mood, emotional withdrawal, appetite disturbance, difficulty concentrating, hyperactivity, easy distractibility, emotional lability, blunt/flat affect, isolation, sleep disturbance, decreased energy, suicidal ideations, and flight of ideas. [R. 766-67.] Dr. Gorrepati further opined that Plaintiff had mild limitations in activities of daily living and marked limitations in maintaining social functioning and maintaining concentration, persistence and pace, with four or more repeated episodes of decompensation of an "extended duration." [R. 767.] It was a check-box form, and Dr. Gorrepati did not elaborate on the frequency or length of decompensation episodes, nor did he opine on how frequently Plaintiff might be expected to miss work or be off-task from work due to her symptoms or decompensation from her mental illness.

On the final page of the form, Dr. Gorrepati noted that Plaintiff would have no significant limitation with asking simple questions or requesting assistance; being aware of and taking appropriate precautions to normal hazards; or traveling in unfamiliar places or using public transportation. [R. 768.] She was, however, moderately limited in understanding, remembering, and carrying out work-like procedures and very short and simple instructions; ability to maintain a schedule, regular attendance and be punctual within customary tolerances; working in coordinating with or proximity to others without distraction; making simple work-related

12

decisions; interacting appropriately with the general public; responding appropriately to criticism from supervisors; getting along with co-workers without distracting them or exhibiting behavioral extremes; maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness; responding appropriately to changes in a work setting; and setting realistic goals or making plans independently of others. [R. 768.] He also opined that she was markedly limited in understanding, remembering, and carrying out detailed instructions; maintaining attention and concentration for extended periods of time; sustaining an ordinary routine without special supervision; performing at a consistent pace without an unreasonable number and length of rest periods; and ability to complete a normal workday/week without interruptions from psychologically based symptoms. [R. 768.]

While the ALJ did incorporate some of these limitations into the RFC as noted above, the ALJ did not find Dr. Gorrepati's opinion persuasive. The ALJ provided the following explanation for why he did not find Dr. Gorrepati's responses on the January 8, 2021, mental impairment questionnaire persuasive:

> I have considered the mental impairment questionnaire completed by the claimant's psychiatrist Dr. Rayal Gorrepati, M.D. on January 8, 2021 (Exhibit 14F). Dr. Gorrepati indicated that he has treated the claimant since May 2020, every two months, most recently seeing her at the end of December 2020. He noted that the claimant was stable as of the last appointment. Dr. Gorrepati reported the claimant is diagnosed with bipolar disorder, anxiety disorder, and borderline personality disorder. Dr. Gorrepati rated the claimant's functional limitations using the former "paragraph b" criteria btu[2] [*sic*] indicated that she had marked limitations in social functioning, and maintaining concentration, persistence and pace, and four or more repeated episodes of decompensation of extended duration. I acknowledged Dr. Gorrepati's specialty in psychiatry but do not find his opinion persuasive. Although Dr. Gorrepati is the claimant's treating specialist, he has only treated the claimant over a seven month period, approximately seeing her every two months. Moreover, Dr. Gorrepati does not refer to his treatment records or refer to findings or observations to support the severity of the limitations as noted in his opinion. The medical evidence of record does not reflect aggressive or increasing treatment due to the claimant's mental impairments. Rather, the

---

[2] The Court assumes that this typographical error is meant to be the word "but."

13

record shows improvement with prescribed medication as the claimant was able to work part time as a cashier, a position that requires significant social interaction with the public, and does not reducing [*sic*] the residual functional capacity any further.

[R. 29.]

As Plaintiff's claim for benefits was filed after March 17, 2017, the evaluation of medical opinion evidence is governed by 20 C.F.R. § 404.1520c. Under that regulation, the opinions of treating physicians are not entitled to special deference or controlling weight. Rather, opinions from any medical source are evaluated against certain factors, including 1) supportability; 2) consistency; 3) the source's relationship with the claimant, including length of time the source has treated the claimant, the frequency of examinations, and the purpose and extent of the treatment relationship, and whether the relationship was an examining one; 4) the source's specialization; and 5) other factors. 20 C.F.R. § 404.1520c. The "most important factors"—and the only factors that the ALJ is required to discuss in her decision—are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2).

Supportability measures how much the relevant objective medical evidence and supporting explanations presented *by* the medical source support his medical opinion. 20 C.F.R. §404.1520c(c)(1)). On this point, while the ALJ summarized Dr. Gorrepati's treatment notes elsewhere in his decision, the ALJ explained that Dr. Gorrepati himself had not referenced his own treatment records, findings, or observations to support the severity of the limitations noted in his opinion. [R. 29.] Under the regulations, the less explanatory support given by the medical source in the opinion, the less persuasive the opinion is. 20 C.F.R. § 404.1520c(c)(1). Thus, the ALJ was entitled to find Dr. Gorrepati's opinion less persuasive based on the doctor's failure to provide supporting explanations for his check-box findings. Moreover, Dr. Gorrepati's treatment notes, which the ALJ summarized, do not provide much support for the severity of limitations to which

14

Dr. Gorrepati opined, as they frequently noted her doing well, having normal mental status examination findings, succeeding at work and planning to re-enter other work that she had stopped doing during the pandemic. [R. 960-976.]

Similarly, as to consistency, "[t]he more consistent a medical opinion . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2). On this point, the ALJ explained that, "[t]he medical evidence of record does not reflect aggressive or increasing treatment due to the claimant's mental impairments. Rather, the record shows improvement with prescribed medication as the claimant was able to work part time as a cashier, a position that requires significant social interaction with the public …." [R. 29.] Plaintiff takes issue with this justification because the ALJ did not explain what "aggressive or increasing treatment" he was suggesting and accuses the ALJ of substituting "presumptions, speculations, and suppositions" for evidence, in violation of Social Security Ruling 86-8.

The Court does not find that the ALJ resorted to presumptions, speculations, and suppositions here, but rather drew reasonable inferences from Dr. Gorrepati's own treatment notes and the other evidence in the record. The Court reads the ALJ's decision as a whole, *Rice v. Barnhart*, 384 F.3d 363, 370 fn.5 (7th Cir. 2004), and here finds that this is not a case like *Nimmerrichter v. Colvin*, 4 F. Supp. 3d 958, 970 (N.D. Ill. 2013), cited by Plaintiff, where the ALJ entirely ignored repeated suicide attempts and hospitalizations or cherry-picked only a handful of positive treatment notes out of a sea of otherwise negative ones. To the contrary, the ALJ acknowledged that Plaintiff had been hospitalized in July 2021 for suicidal ideation and that "[t]he medical evidence of record clearly demonstrates that the claimant has bipolar disorder with depressive and manic episodes, which is managed with medication." [R. 26-27.] The ALJ did also

15

note, however, that upon discharge from Plaintiff's July 2021 hospitalization, she returned to her part-time job and was provided with a note, at her request, instructing her to return to work without restrictions. [R. 27; R. 30, *citing* R. 775.]

Contrary to Plaintiff's accusation that the ALJ believed that her mental impairments wasn't "all that bad" (her words, not the ALJ's), [Dkt. 18 at 15], the ALJ actually identified several mental health symptoms requiring accommodations throughout his analysis of the medical record, as described above. Thus, the Court cannot say that the ALJ relied on impermissible speculation or nonchalantly dismissed serious evidence corroborating her treating psychiatrist's opinion. Rather, the ALJ's decision demonstrates due consideration of the supportability and consistency factors, as required under the regulations, as well as consideration of additional factors such as the length of the treatment relationship and Dr. Gorrepati's specialization in psychiatry. [R. 29.] Plaintiff's argument amounts to a request that the Court substitute its own weighing of the medical source evidence for the ALJ's, which this Court is not permitted to do. *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) ("We will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it.").

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment [dkt. 18] is denied, and the Commissioner's motion for summary judgment [dkt. 24] is granted. The Court affirms the Commissioner's final decision.

**SO ORDERED.**

Date: 11/8/23

BETH W. JANTZ
United States Magistrate Judge